```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
REGGIE BROWN,                                                 :
                       Plaintiff,                             :
                                                              :      **OPINION AND ORDER**
v.                                                            :
                                                              :      15 CV 5093 (VB)
ROBERT F. CUNNINGHAM, ANTHONY                                 :
ANNUCCI, JIM GAMBINO, ANN MARIE                               :
MCGRATH, JOHN DOE/JANE DOE,                                   :
JEFFREY MCKOY, JOSEPH BELLNIER,                               :
                       Defendants.                            :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Reggie Brown, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants violated his constitutional rights by transferring him from Woodbourne Correctional Facility ("Woodbourne") to Franklin Correctional Facility ("Franklin") and then from Franklin to Greene Correctional Facility ("Greene") in retaliation for the plaintiff's exercise of his First Amendment rights.

Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #27).

For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint as true, and draws all reasonable inferences in plaintiff's favor.

On May 23, 2013, plaintiff was granted an "area-of-preference" transfer from Eastern Correctional Facility to Woodbourne. (Am. Compl. at 7).[1]

Plaintiff alleges that while housed at Woodbourne, he "was working, very hard, on achieving his High School Equivalency Diploma, so he could sign up for the summer of 2015 Bard College program." (Am. Compl. at 5).

However, beginning shortly after his arrival at Woodbourne, plaintiff became dissatisfied with the medical treatment he was receiving. He filed several grievances, "numerous letters," and, on August 6, 2014, he initiated an Article 78 petition in Supreme Court, Sullivan County, relating to his medical treatment at Woodbourne (Index No. 001862/2014). (Am. Compl. at 10).

In September 2014, shortly after his Article 78 petition was served, plaintiff's "housing officer" told plaintiff he was being transferred to another facility. (Am. Compl. at 11). The housing officer told plaintiff he did not know why he was being transferred.

Plaintiff then wrote a letter to defendant Cunningham, the Superintendent of Woodbourne, in which he asked why he was being transferred and explained he did not think it was justified. In particular, plaintiff allegedly informed Cunningham he had "never requested a transfer, signed a hub waiver, violated any of the prison rules and regulations, caught a ticket during his entire stay at Woodbourne, or done anything that would cause him to be transferred to another facility and lose his area-of-preference transfer." (Am. Compl. at 11).

By memorandum dated September 30, 2014, Cunningham confirmed plaintiff would be transferred. In particular, Cunningham wrote, "As discussed, as a result of your dissatisfaction with your medical treatment at this facility, your public criticism of the medical treatment of all

---

[1] Because some of the pages of the amended complaint are mis-numbered, all citations to the amended complaint made herein refer to the ECF page number appearing at the top of the page.

inmates at Woodbourne Correctional Facility and your overall inability to get along with medical staff here, you are being transferred to a more suitable facility." (Am. Compl. Ex. H).

On October 7, 2014, plaintiff was transferred to Franklin.

Plaintiff opposed this decision and sought transfer back to Woodbourne. On October 10, 2014, he filed a grievance to this effect. On October 29, 2014, plaintiff was informed he would "be submitted for an area-of-preference transfer." (Am. Compl. Ex. I). Plaintiff was then placed on a waiting list for transfer back to his area-of-preference.

Plaintiff then sent letters to defendants Anthony Annucci, Ann Marie McGrath, Jim Gambino, John/Jane Doe, Jeffrey McKoy, and Joseph Bellnier, requesting expedited transfer back to Woodbourne, but with no success.

Plaintiff initiated this case on June 30, 2015. He alleges after defendants were served with the complaint, defendant McGrath "had plaintiff transferred" to Greene, "as a form of punishment." (Am. Compl. at 14).

According to the New York State Department of Corrections and Community Supervision website, plaintiff was released to parole on September 8, 2016.[2]

**DISCUSSION**

I.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). "[F]ederal

---

[2] See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120. Plaintiff has not submitted a change of address form or otherwise informed the Court of his new address. The Court has informed plaintiff at least twice that it is his "obligation to promptly submit a written notification to the Court if plaintiff's address changes," and that "the Court may dismiss the action" if plaintiff failed to do so. (See Docs. ##6, 24).

courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges

courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges

civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.     Retaliation Under Section 1983

Defendants argue plaintiff's amended complaint fails plausibly to allege that plaintiff was transferred in retaliation for exercising his First Amendment rights.

The Court disagrees with respect to plaintiff's transfer from Woodbourne to Franklin, but agrees with respect to plaintiff's transfer from Franklin to Greene.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotations omitted).

"But because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations."  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotations omitted).

A.      Transfer from Woodbourne to Franklin

Plaintiff alleges defendant Cunningham made the decision to transfer him from Woodbourne to Franklin in retaliation for having filed grievances and appeals against prison employees, and for filing an Article 78 petition in state court.

First, such speech is protected under the First Amendment. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by" the First Amendment "and is actionable under § 1983.").

Second, plaintiff alleges the transfer was "adverse" because Woodbourne was his area-of-preference location, he would no longer be able to participate in certain educational programs or reentry programs, and because his loved ones would be farther away.

Finally, plaintiff alleges—and provides documentary evidence showing—that one of the reasons given for the decision to transfer him to Franklin was his "public criticism of the medical treatment of all inmates at Woodbourne Correctional Facility." (Am. Compl. Ex. H). Further, plaintiff alleges he never violated any prison rules, was never the subject of any disciplinary action, and never did anything else that would have warranted transfer away from his area-of-preference. These allegations suggest that the reason for the transfer was to retaliate against him. Thus, he has alleged the necessary causal connection between the exercise of his First Amendment rights and the transfer.[3]

Accordingly, plaintiff has sufficiently alleged Cunningham made the decision to transfer him from Woodbourne to Franklin in retaliation for the exercise of his First Amendment rights.[4]

---

[3] Defendants argue plaintiff must prove that the retaliatory action would not have been taken but for the exercise of First Amendment rights. (Defs.' Br. at 5). However, they cite only cases deciding motions for summary judgment, not motions to dismiss. At the motion to dismiss stage, the Court need only evaluate plaintiff's allegations, not whether he has adduced sufficient evidence to succeed on his claim.

[4] Plaintiff also asserts claims against "Mr. John/Jane Doe" for "submitting the transfer referral to Classification & Movement to have plaintiff transferred from Woodbourne." (Am. Compl. at 4, 12). This bare-bones allegation cannot survive a motion to dismiss. In particular, it lacks any specificity regarding whether this individual knew about Cunningham's statement that plaintiff was being transferred because he complained about his medical treatment, or what authority, if any, this John/Jane Doe had over the transfer process.

B.     Transfer from Franklin to Greene

Although not spelled out clearly, plaintiff appears to allege McGrath made the decision to transfer plaintiff from Franklin to Greene in retaliation for having filed this lawsuit. (Am. Compl. at 14).

Plaintiff has failed to allege sufficient facts to support this claim.

First, plaintiff states in a conclusory fashion that his transfer to Greene was "a form of punishment," but provides no explanation for why that would be. In fact, Greene is much closer than Franklin to his area-of-preference prison, Woodbourne. Moreover, all three facilities are medium-security prisons. Accordingly, there are insufficient allegations of "adverse action."

In addition, plaintiff merely suggests a vague temporal relationship—that he was transferred some unspecified amount of time after defendants in this case were served with plaintiff's complaint. (Am. Compl. at 14). A more specific timeframe is needed to allege causation. Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) ("failure to set forth a time frame for the alleged events . . . precludes inference of a causal relationship"), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

Accordingly, because plaintiff makes only conclusory statements regarding his transfer from Franklin to Greene, his retaliation claim against McGrath is dismissed.

III.    Claims for Failing to Correct the Violation

The only other allegations in the amended complaint consist of claims against defendants Annucci, McGrath, Gambino, John/Jane Doe, McKoy, and Bellnier, for their alleged failure to "correct the violation by transferring plaintiff back to Woodbourne." (Am. Compl. at 13). Plaintiff alleges they "failed to comply with the grievance and CORC decision to send [plaintiff] back to his area-of-preference hub and facility." (Id.). He also alleges these defendants are

7

responsible under a theory of supervisor liability, "for failing to correct a wrong after they had been made aware of the violation." (Id.).

Defendants argue these claims should be dismissed for lack of personal involvement.

The Court agrees.

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

A.  Annucci and Bellnier

Plaintiff alleges Commissioner Annucci and Deputy Commissioner Bellnier forwarded plaintiffs' grievance letters to McGrath without taking any action. However, "a supervisor's decision to refer a prisoner's letter to his subordinate for investigation does not constitute personal involvement." George v. County of Westchester, 2014 WL 1508612, at *8 (S.D.N.Y. Apr. 10, 2014) (internal quotations omitted).[5]

Accordingly, plaintiff's claims against Annucci and Bellnier are dismissed.

B.  Gambino and McKoy

Plaintiff alleges Gambino and McKoy failed to respond to his letters.[6] There are no other allegations regarding either of these defendants. This allegation alone is insufficient to state a claim: "allegations that an official ignored a prisoner's letter is not enough to establish personal involvement." Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003).

Accordingly, the claims against Gambino and McKoy are dismissed.

---

[5] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[6] Plaintiff also alleges he wrote a letter to John/Jane Doe. He provides no detail and does not state whether this individual wrote back. Again, this is insufficient to survive defendants' motion to dismiss.

C.     McGrath

Plaintiff alleges he wrote a letter to McGrath requesting that she correct the violation by transferring him back to Woodbourne. Plaintiff alleges McGrath nevertheless "refused to transfer him back" to Woodbourne and that by "refus[ing] to correct the violation," she "continue[d] to violate his rights." (Am. Compl. at 14).

However, plaintiff does not allege that McGrath had the ability to correct the alleged violation. In fact, the documents plaintiff attached to his complaint show McGrath knew plaintiff's area of preference transfer had been approved, but that he could not be transferred immediately because there was no space available.[7] Specifically, in four separate response letters dated February 19, 2015, March 4, 2015, April 15, 2015, and January 11, 2016, McGrath wrote to plaintiff that his transfer "ha[d] been approved," and "[m]ovement will be effected as soon as appropriate space becomes available." (Am. Compl. Exs. J-M).

As a result, McGrath cannot be said to be personally liable for the failure to transfer plaintiff back to Woodbourne because the ability to do so was out of her hands. See Hernandez v. Goord, 2013 WL 2355448, at *8 (S.D.N.Y. May 29, 2013).

Accordingly, the claims for failure to correct the violation against defendants Annucci, Gambino, McGrath, Doe, McKoy, and Bellnier are dismissed.

IV.    Qualified Immunity

Defendants argue Cunningham is entitled to qualified immunity because "the facts alleged do not plausibly establish that [he] violated the Constitution by transferring plaintiff in retaliation for exercising his First Amendment rights." (Defs.' Br. at 13).

---

[7]    "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court disagrees.

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotations omitted).

As discussed above, Cunningham wrote that one of the reasons plaintiff was being transferred from Woodbourne to Franklin was because he had publically complained about the medical treatment of all inmates at Woodbourne. This implicates a First Amendment right, which was clearly established at the time, and it was not on its face reasonable for Cunningham to believe he could lawfully transfer plaintiff for exercising that right.

V.   Limitations on Defendant's Remaining Claim Against Cunningham

As discussed, the only claim that survives defendants' motion to dismiss is the First Amendment retaliation claim against defendant Cunningham. However, there are several significant limitations on that claim.

First, the Eleventh Amendment grants state officials acting in their official capacity immunity against suit for monetary damages. Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir. 1993). Therefore, all monetary damages claims against defendant Cunningham in his official capacity are dismissed.

Second, because defendant has recently been released from custody, his injunctive relief claim—namely, that he be transferred back to Woodbourne—is dismissed as moot. See Douglas v. Hollins, 160 F. App'x 55, 56 (2d Cir. 2005) (summary order).

Finally, "[n]o Federal action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Here, plaintiff does not allege physical or sexual abuse. As a result, any claims for damages associated with mental or emotional injury are dismissed.

However, although 42 U.S.C. § 1997e(e) bars claims for mental or emotional injury, it "does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages." Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002). Thus, plaintiff's claims for nominal (i.e., One Dollar) or punitive damages for violation of his constitutional rights may proceed, at least for now. This ruling is without prejudice to Cunningham's moving for summary judgment at the appropriate time.

Accordingly, only plaintiff's claim against defendant Cunningham in his individual capacity for nominal or punitive damages related to plaintiff's allegations of retaliatory transfer from Woodbourne to Franklin may go forward.

VI.   Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).

However, leave to amend may "properly be denied for . . . futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, plaintiff has already been given an opportunity to amend. In particular, after defendants moved to dismiss plaintiff's original complaint, plaintiff requested leave to amend. (Docs. ##16, 18). By Order dated December 4, 2015, the Court granted that request. (Doc. #19). The Court encouraged plaintiff to "review carefully defendants' motion to dismiss and the arguments made therein," and to "include all the factual allegations" that supported his claims. (Id.). Plaintiff then filed an amended complaint, which is the subject of the instant motion.

Moreover, the central claim in plaintiff's amended complaint—that he was transferred from Woodbourne to Franklin in retaliation for the free exercise of his First Amendment rights—is going forward against the only defendant personally involved in that decision. Plaintiff's other allegations were either barred as a matter of law or plainly insufficient to state a claim. As a result, allowing plaintiff to amend those claims would be futile.

The Court therefore declines to grant plaintiff leave to file a second amended complaint.

## CONCLUSION

Defendants' motion to dismiss is (i) DENIED as to plaintiff's claim against defendant Cunningham in his individual capacity for nominal or punitive damages related to his allegations of retaliatory transfer from Woodbourne to Franklin, and (ii) GRANTED in all other respects.

As noted above (see supra n.2), plaintiff has been released from prison but has not provided the Court with a new address, despite the Court's repeated instruction that it is his obligation to do so and that his case could be dismissed for failing to do so. Accordingly, it is

hereby ORDERED:  **Plaintiff must submit a change of address form or other letter updating his address by no later than March 31, 2017.  Failure to do so will result in dismissal of this case.**  The Court will schedule an initial conference if and when plaintiff provides a new address.

The Clerk is instructed to mail a copy of this Opinion and Order to plaintiff at the address as it appears on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Doc. #27).

Dated: February 14, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge